WILLIAM H. BARNARD and LILLIE F. BARNARD, His Wife, Respondents, *v.* NOAH H. SWAYNE and Others, Appellants.

First Department, December 14, 1917.

Real property — restrictive covenants — rights of mortgagee — covenant restricting buildings to be erected not applicable to use of existing building.

A mortgagee may, if he so elects, take advantage of a restrictive covenant executed after the mortgage and have the premises sold with the benefit of said covenant appertaining thereto, making parties defendant all interested in any way in said covenant.

An agreement for a restrictive covenant, canceling prior covenants containing building restrictions and providing that buildings " to be erected " and that " shall be erected " upon the premises shall be private dwellings, deals entirely with the future and does not restrict the use of a building existing at the time of said agreement, and, therefore, the use of said building for school purposes cannot be restrained as in violation of the agreement.

APPEAL by the defendants, Noah H. Swayne and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 14th day of May, 1917, upon the decision of the court after a trial at the New York Special Term.

The judgment restrained the defendant Shaw from conducting or continuing a school for girls upon the defendants Swaynes' premises.

*Henry A. Prince,* for the appellants Swayne.

*Clarence R. Freeman* [*Clarence U. Carruth* and *John H. Judge,* with him on the brief], for the appellant Shaw.

*William L. Woodward* [*Stephen C. Fiero* with him on the brief], for the respondents.

DOWLING, J.:

Plaintiffs are the owners of premises situate on the northeast corner of Eighty-ninth street and Riverside Drive in

the borough of Manhattan, city of New York. Defendants Swayne are the owners of the adjoining premises to the north, being the southeast corner of Ninetieth street and Riverside Drive. The latter premises are leased to defendant Shaw, who conducts in the building erected thereon a school known as the " Hamilton Institute for Girls," attended by some eighty-five pupils, between the ages of five and eighteen, whose school hours are between eight o'clock in the morning and three o'clock in the afternoon. Plaintiffs claim that the use of these premises for school purposes is in violation of the terms of an agreement dated September 23, 1897, hereinafter set forth.

The block bounded by Eighty-ninth and Ninetieth streets, Riverside Drive and West End avenue, was owned in 1880 by Julia A. Clark and was subject to a mortgage for $70,000, held by an assignment by the Mutual Life Insurance Company. By deed dated May 11, 1887, Julia A. Clark and her husband conveyed to John O. Baker the part of the block in question fronting on West End avenue, and marked on the following diagram as Plot No. 1. Mrs. Clark still remained the owner of the plots marked thereon 2, 3 and 4, as subdivided by her, and shown on the diagram, which was annexed to the Baker deed.

The deed to Baker imposed upon plot No. 1 the following restrictions: " That no building shall be erected within twenty-one years from the date hereof on the premises hereby conveyed, or any part thereof, except private dwellings

and private stables, such stables not to exceed five in number."

Upon 2, 3 and 4 (title to which still remained in Julia A. Clark) the following restriction was imposed: " That no buildings shall be erected within twenty-one years from the date hereof on the premises owned by the said Julia A. Clark and bounded on the east by the premises hereby conveyed and on the west by Riverside Drive and on the north by 90th Street and on the south by 89th Street and designated on the map or diagram hereto annexed as plots Nos. 2, 3 and 4, or any part thereof, except private dwellings not more than three in number, one upon each of said plots respectively, and not more than fifty feet each in width, with one private stable to each of said three dwellings, one upon each of said plots respectively, the stable on plot No. 3 not to·exceed two stories in height."

It was further provided: " And it is hereby mutually agreed that the aforesaid covenants and each of them shall run with the land and continue for twenty-one years."

At the time of the conveyance of plot 1 to Baker there were no buildings erected on any of the plots embraced in the block in question, but plans had been filed by Mrs. Clark for the erection of a dwelling house on plot 4, and the deed in question therefor provided: " It is understood, however, that the said Julia A. Clark may erect upon said plot number four a dwelling house according to plans already designed for that purpose and which are hereby approved by the party of the second part having a frontage towards Riverside Drive of 56 feet including a tower and oriel window. And it is agreed that in case the said plans shall be altered by diminishing the width of said front then the amount of such deduction shall be allowed to said Julia A. Clark upon either plot two or three as she may elect, but such allowance shall only apply to bay windows, towers, oriel windows or other extensions and is not to·be added to the width of the main body of either of said buildings."

It is conceded that the building now standing on plot 4 on said diagram was commenced August 9, 1887, and finished October 30, 1888, and is the building the plans for which were referred to in the said deed to Baker, and no other

residence has been built on said premises, with the exception of the fact that two small extensions were thereafter added to said residence on the southerly side thereof, and extending to a point within ten feet of the dividing line between plots 3 and 4 on said diagram; said extensions being additions to the basement portion of said building and extending no more than six feet above the ground, and having been planned and constructed respectively in the years 1894 and 1901. The garage now on plot 4 was commenced in September, 1894, and finished in April, 1895.

By agreement dated October 30, 1888, between Charles T. Barney, Francis M. Jencks and Bernard Wilson (owners of the total area of original parcel 1) and Julia A. Clark (still owning plots 2, 3 and 4), the covenants in the Baker deed were modified as to parcels Nos. 2 and 3 so that Mrs. Clark, her heirs or assigns, might, at her or their option, erect upon each of said plots 2 or 3, either a single dwelling or a building containing not more than two private dwellings, provided that the building erected upon each of said plots should be not more than fifty feet in width. Except as thus modified the several covenants contained in the Baker deed were expressly affirmed.

On September 23, 1897, an agreement was made in writing between Mary L. Parsons (then owner of parcel No. 4), Annie B. Phelps (then owner of the subdivision of original parcel No. 1, adjoining plot No. 4 on the east, and situate on the southerly side of Ninetieth street) and Cyrus Clark (the owner of parcels 2 and 3). The relative location of these plots is shown on the following diagram:

This agreement recited the existence of the covenants and agreements in the Baker deed dated May 11, 1887 ("restricting as to the buildings to be erected thereon, the use of said

parcels Nos. 2, 3 and 4 shown on said diagram annexed hereto, for a period of twenty-one years from the day of the date of said deed ") and the agreement between Barney, Jencks, Wilson and Mrs. Clark, dated October 30, 1888, as well as the conveyance of plot 4 to Edwin Parsons, subject to the restrictions, covenants and agreements contained in said deed and tripartite agreement, which said restrictions Cyrus Clark and Julia A. Clark, the grantors, covenanted and agreed to extend and continue for a period forty years from the expiration of the time of the restrictions aforesaid, namely, to May 11, 1948. Parsons, the grantee, had made no covenant or agreement as to the restrictions on his part, extending the life of the restrictions against the property deeded to him to that, or any other date. The agreement continued:

" WHEREAS, the several parties hereto now desire to release and relieve the premises designated on the annexed diagram by the numbers 2, 3 and 4, from each and all the agreements, covenants and restrictions as to buildings contained in said deed and agreement recorded in Liber 2068 of Conveyances, Page 51, and in Liber 2160 of Conveyances, page 161, respectively, and also from each and all the covenants and restrictions as to buildings contained in said deed recorded in Liber 33 of Section 4 of Conveyances, page 460, and to give up and release to each other, as the several owners of said premises, all rights, easements and privileges which they have in the several parcels 2, 3 and 4 shown on said diagram under and by virtue of the restrictions contained in said deeds and agreements as to the erection of buildings thereon, which are appurtenant to the said several parcels or any of them shown on said diagram; and

" WHEREAS, the parties hereto have respectively agreed that all of said covenants, restrictions and agreements as to buildings, contained in said agreement and two deeds, restricting the premises shown on the annexed diagram as Nos. 2, 3 and 4, as to the manner and kind of buildings to be erected upon the same, shall be cancelled and become null and void and of no effect; and have agreed to substitute in place therefor new restrictions upon the premises designated on the annexed diagram as parcels Nos. 2, 3 and 4, belonging to the parties of the first and third parts hereto."

The three instruments herein referred to are the Baker deed, the Barney, Jencks, Wilson and Clark agreement and the Parsons deed, and cover all the covenants and agreements affecting the premises in question (parcels 2, 3 and 4). The agreement then provided that the respective owners of the four parcels of land do thereby " remise and release, quit-claim and surrender, all right, title and interest of every kind and nature in and to all rights, easements, privileges and interests which the parties hereto or any of them may have as owner of any of said premises under and by virtue of the covenants and agreements contained in said deed recorded in Liber 2068 of Conveyances, page 51, and by virtue of said agreement recorded in Liber 2160 of Conveyances, page 161, and also by virtue of said deed recorded in Liber 33 of Section 4 of Conveyances, page 460, as to the character, number, width, kind and position of the buildings to be erected upon said parcels 2, 3 and 4 and which are appurtenant to the several parcels now owned by the several parties hereto respectively, so that said parties of the first and third parts hereto shall respectively hold said parcels numbers 2, 3 and 4, forever free and clear and discharged from all easements and restrictions as to buildings except as hereinafter provided.

" And it is mutually covenanted and agreed by and between the parties hereto that all the covenants and agreements contained in said deed recorded in Liber 2068 of Conveyances, at page 51 and in said agreement recorded in Liber 2160 of Conveyances, page 161, and in said deed recorded in Liber 33 of Section 4 of Conveyances, page 460, as to the number, width, character and location of buildings to be built upon the premises shown on the annexed diagram, as parcels Nos. 2, 3 and 4, and now belonging to the party [*sic*] of the first and third parts hereto, shall become and be null and void and of no effect from the day of the date hereof.

" And in consideration of the premises, the party of the first part hereto hereby covenants and agrees for herself, her heirs, executors, administrators and assigns, that for a period of thirty-five years from the date hereof, no buildings shall be erected on the premises owned by her and shown on the annexed diagram, as parcel No. 4, except private dwellings, not to exceed two in number, each constructed for one family

only, and one stable which shall not exceed two stories in height, and further that no building or buildings erected upon said premises shall be nearer the Easterly line of Riverside Drive or Avenue, than ten feet or nearer than ten feet to the southerly line of the above premises, designated as parcel No. 4, on the annexed diagram and now belonging to the party of the first part hereto.

" And in consideration of the premises, the party of the third part for himself, his heirs, executors, administrators and assigns, hereby covenants and agrees that for a period of thirty-five years from the date hereof, no building or buildings shall be erected upon the premises now owned by him and shown on the annexed diagram as parcels numbers 2 and 3, except private dwellings not to exceed four dwellings on the whole lot designated by the Nos. 2 and 3 each constructed for one family only, and two stables, not more than one stable on each plot, Nos. 2 and 3 and that any stable erected within said period on said parcel number 3, shall be erected at the extreme easterly end of said plot and shall not be more than two stories in height.

" And the party of the third part further covenants that no building erected within said period upon the premises belonging to the party of the third part hereto, and designated on the annexed diagram as parcels Nos. 2 and 3, shall be nearer the southerly line of the premises belonging to the party of the first part hereto, and on the annexed diagram designated as parcel No. 4, than ten feet, and that any building or buildings erected within said period upon the premises of the party of the third part hereto, designated as parcels Nos. 2 and 3, shall be at least ten feet easterly from the easterly line of Riverside Drive or Avenue. And that no stable shall be erected within said period upon the premises of the party of the third part hereto, designated on said diagram as parcels Nos. 2 and 3, within ninety feet of the southerly line of Ninetieth Street."

Provision is then made for preserving a right of way across parcel 4, appurtenant to parcels 2 and 3, and that the agreements are to be construed as running with the land and as binding the heirs, executors, administrators and assigns of the respective parties, and that any deed or other instrument

affecting the said premises made by any of the parties thereto should contain a provision subjecting the premises to the provisions of the agreement.

On October 27, 1897, the Mutual Life Insurance Company began action against Edward E. Black, owner of the equity of redemption of plots 2 and 3, to foreclose its mortgage on said plots, and Cyrus Clark, Julia A. Clark, Mary L. Parsons, Annie B. Phelps and all persons having or claiming to have any interest in or lien upon the said parcels of land, or any right to enforce as against the same any restrictions theretofore imposed thereon, were joined as defendants. The mortgage originally covered all the block, but all the rest thereof had been released therefrom, except parcels 2 and 3. As part of the relief demanded, plaintiff asked that said plots be sold " Subject, however, to the covenant and restrictions set forth in a certain agreement made by and between Mary Llewellyn Parsons, Annie B. Phelps and Cyrus Clark bearing date the 23d day of September, 1897, and recorded in the office of the Register of the City and County of New York on the 2d day of October, 1897." The judgment provided that the property be sold " subject, however, to and with the benefit of the covenants and restrictions " set forth in the said agreement and the property having been sold at public sale to Francis S. Marden, the referee's deed contained a like provision. Marden thereafter conveyed plots 2 and 3 to Elizabeth S. Clark, subject in like manner to the said agreement, and Cyrus Clark and Julia A. Clark on the same day executed a conveyance of the same premises, together with all the rights, easements, privileges and property belonging to the grantors and reserved in the deed to Parsons, except such as had been released by the agreement of September 23, 1897. On March 24, 1898, Edward E. Black conveyed all his interest in the said premises to the same grantee, subject to said agreement.

On July 14, 1898, Mary L. Parsons, Annie B. Phelps and Elizabeth S. Clark entered into a further agreement reciting the agreement of September 23, 1897; that Elizabeth S. Clark had become the owner of parcels 2 and 3, and was about to erect a dwelling house thereon, the plans of which showed certain ornamental projections which would be nearer than

ten feet to Riverside Drive and to the line of Mrs. Parsons' lot; and that it was not the intention of the parties to prohibit the placing of ornamental projections which might project beyond the ten-foot line. The parties, therefore, agreed " that said restriction agreement, bearing date the 23d day of September, 1897, and recorded as aforesaid on the 2d day of October, 1897, shall not be construed so as to prohibit the placing and maintaining on any building erected or to be erected upon the premises described in said agreement, now belonging to the parties of the first and third parts hereto, any cornice, windowcap, sill, balcony, areaway, moulding or other ornamental feature projecting from the wall or walls of said house nearer to the Easterly line of Riverside Drive than ten feet or nearer to the division line between premises of the parties of the first and third parts hereto than ten feet; provided, however, that the walls of said building or buildings shall be at all points at least ten feet distant from the Easterly line of Riverside Drive and at least ten feet distant from the division line between the premises of the parties of the first and third parts hereto, and further provided that any such ornamental projection or feature situate above the level of the ground shall not extend out from the said walls towards the Easterly line of Riverside Drive or towards the said division line more than four feet at any point.

" It is further understood and agreed by and between the parties hereto that this agreement is to be construed as running with the. land and is to bind the heirs, executors, administrators and assigns of the respective parties hereto."

The building now standing on .plots 2 and 3 on said diagram was commenced August 15, 1898, and completed July 31, 1900, and is the building the plans for which were referred to in this agreement.

Plaintiff contends that the agreement of September 23, 1897, related to the use as well as to the structure of the building on plot 4, and that the covenant restricting buildings to " private dwellings not to exceed two in number, each constructed for one family only," was violated by the use of the building on plot 4 for a private school.

Defendants contend that the agreement of 1786 is no longer in existence, having been destroyed by the foreclosure suit of the Mutual Life Insurance Company against Black and others, which went to judgment. We do not agree with this contention, but on the contrary believe that the mortgagee had the right, if it so elected, to take advantage of the agreement of 1897 (executed long after the mortgage to it was made) and to have the premises sold with the benefit of this agreement appurtenant thereto, which it did, making parties defendant all interested in any way in said agreement, and asking by the complaint, and receiving by the judgment, in the action as part of its relief, the sale of said mortgaged premises subject to and with the benefits of said agreement.

I believe, however, that defendants are correct in their contention that the covenant of 1897 did not purport to control the mode of occupancy of the then existing private residence on plot 4, but was only a covenant as to structures thereafter to be built upon it. We have in the agreement in question no informal paper, or one giving evidence of hasty, unskillful or non-professional preparation. It is drawn with the utmost care, and shows a practiced hand in its terms and phraseology. When an agreement prepared with so much solicitude that its reason and purpose may be elaborately stated, is characterized by equal care that its objects and covenants are adequately set forth, we must assume that it represents the deliberate act of the parties and properly states their actual agreement. All the parties to it must have realized the gravity of what they were about to do, for they were not simply adding some trifling provision to a subsisting contract, but in the formal solemn manner abolishing the most important provisions of an existing agreement, still having many years to run, and substituting an entirely different plan for the improvement of this very important and valuable block front on Riverside Drive and which was to control its development and status for thirty-five years to come. A consideration of the circumstances then existing will show what the parties were seeking to accomplish and a reading of the agreement itself discloses how they sought to effect their purpose. In September, 1897, plot 4 was the

only lot in this block, fronting on Riverside Drive, on which a building had been erected. That building had stood there for nearly ten years and was a private dwelling. Plot 4 was subject to a restriction as created in 1887 that for a period of twenty-one years from May 11, 1887, no building *should be erected* except a private dwelling not more than fifty feet wide, with one private stable. The house standing in 1897 on plot 4 complied with this requirement, the plans for a building with fifty-six feet frontage on the drive, including a tower and oriel window, having been expressly approved. Plot 4 was seventy-nine and four-tenths feet wide, so only one house could be erected thereon. The restrictive covenant against plot 4 expired by its terms May 11, 1908. In 1897 plots 2 and 3 were still unimproved. They had been originally subject to a restriction (created in 1887) that no building *should be erected* thereon except on *each* of said lots a private dwelling not more than fifty feet front and a private stable. This restriction had been modified in 1888 so that the owners of plots 2 and 3 " may at their option erect " upon each of said plots either a single dwelling or a building containing not more than two private dwellings, provided the building upon each plot should not exceed fifty feet in width. Thus plots 2 and 3 could not be utilized as a single plot for a large dwelling. Furthermore, the restrictive covenants in *favor* of plot 4 *as against* plots 2 and 3 had been extended by the Parsons deed until 1948. So that, if the owners of plots 2 and 3 desired to secure the right to treat their plots as a single plot for suitable improvement and to modify the restrictions against them not expiring until 1948, they would have to make concessions to the owner of plot 4, improved by a private dwelling, with all restrictions against it expiring in 1908. Therefore, the agreement of 1897, after reciting the desire of the parties thereto " to release and relieve the premises designated on the annexed diagram by the numbers 2, 3 and 4, from each and all the agreements, covenants and restrictions as to buildings " contained in the deed and agreement of 1887 and 1888 and the Parsons deed, further recited that the parties had " agreed that all of said covenants, restrictions and agreements as to buildings, contained in said agreement and two deeds, restricting the premises shown on the annexed

diagram as Nos. 2, 3 and 4, as to the manner and kind of buildings to be erected upon the same, shall be cancelled and become null and void and of no effect," and have agreed to substitute in place therefor new restrictions upon premises 2, 3 and 4. The agreement then provides: (1) The parties mutually remise, release, quitclaim and surrender " all right, title and interest of every kind and nature in and to all rights, easements, privileges and interests which the parties hereto or any of them may have as owner of any of said premises under " the instruments recited "as to the *character,* number, width, *kind* and position of the buildings *to be erected* upon said parcels 2, 3 and 4, and which are appurtenant to the several parcels now owned by the several parties hereto respectively, so that said parties of the first and third parts hereto shall respectively hold said parcels numbers 2, 3 and 4, forever free and clear and discharged from all easements and restrictions as to buildings except as hereinafter provided." Then follow the new restrictive covenants and agreements. *First,* the party of the first part (Mrs. Mary L. Parsons, owner of parcel No. 4), then improved by a private dwelling house, concededly complying with the heretofore existing covenants, gains the right to erect two dwellings instead of one on her plot (already built upon) with only a limitation that such buildings must not be nearer than ten feet to Riverside avenue or to the southerly line of her plot. This provision reads:

" And in consideration of the premises, the party of the first part hereto hereby covenants and agrees for herself, her heirs, executors, administrators and assigns, that for a period of thirty-five years from the date hereof, *no buildings shall be erected* on the premises owned by her and shown on the annexed diagram as parcel No. 4, except private dwellings, not to exceed two in number, each constructed for one family only, and one stable which shall not exceed two stories in height; and further that no building or buildings *erected* upon said premises shall be nearer the Easterly line of Riverside Drive or Avenue, than ten feet or nearer than ten feet to the southerly line of the above premises, designated as parcel No. 4 on the annexed diagram and now belonging to the party of the first part hereto."

On the other hand, Cyrus Clark (party of the third part, the owner of plots 2 and 3) gained the right to treat the entire plottage as a single plot, and to build thereon either one private dwelling (as in fact was done) or not to exceed four private dwellings and two private stables thereon (but not more than one stable on either plot). He was restricted as to where the stable on lot 3 should be placed and as to its height, and was also obliged to erect his buildings at least ten feet east of Riverside Drive and at least ten feet away from plot No. 4, nor was any stable to be erected within ninety feet of the southerly line of Ninetieth street. The provisions are as follows: " And in consideration of the premises, the party of the third part for himself, his heirs, executors, administrators and assigns, hereby covenants and agrees that for a period of thirty-five years from the date hereof, no building or buildings *shall be erected* upon the premises now owned by him and shown on the annexed diagram as parcels numbers 2 and 3, *except private dwellings* not to exceed four dwellings on the whole lot designated by the Nos. 2 and 3, each constructed for one family only, and two stables, not more than one stable on each plot Nos. 2 and 3 and that any stable erected within said period on said parcel number 3 shall be erected at the extreme easterly end of said plot and shall not be more than two stories in height.

" And the party of the third part further covenants that no building *erected within said period* upon the premises belonging to the party of the third part hereto and designated on the annexed diagram as parcels Nos. 2 and 3, shall be *nearer* the southerly line of the premises belonging to the party of the first part hereto, and on the annexed diagram designated as parcel No. 4, than ten feet, *and that any building or buildings erected within said period* upon the premises of the party of the third part hereto, designated as parcels Nos. 2 and 3, shall be at least ten feet easterly from the easterly line of Riverside Drive or Avenue. And that no stable *shall be erected* within said period upon the premises of the party of the third part hereto, designated on said diagram as parcels Nos. 2 and 3, within ninety feet of the southerly line of Ninetieth Street."

It is impossible to read this agreement without being con-

vinced that its real meaning, intent, purpose and application were to deal with the restrictions imposed on buildings *to be erected* on the land affected. There is not a phrase or provision fairly applicable to a restriction upon the use or character of any existing dwelling. It was an agreement dealing entirely with the *future*, not with the *present*, and whether because the building then erected upon plot 4 was of a character which seemed to preclude its being considered for profitable occupancy save as a private dwelling house, or for some other reason, no restriction whatever was placed upon the purposes for which said building might be used. The execution of the agreement of 1897 abolished whatever restrictions might theretofore have existed affecting the building then standing on plot No. 4, by expressly annulling the provisions of the agreement of 1887 applicable thereto. It created no new restrictions upon the character of the use or occupancy of that building. It simply fixed the character, number and location of the buildings to be erected thereafter upon either plots 2, 3 or 4. It dealt only with new constructions and new buildings. It had no application to the existing dwelling on plot 4, which remained unrestricted by covenants or agreements of any kind. The plaintiffs, therefore, under the agreement of 1897, have no right to enforce any restrictive covenant as against the existing building on plot 4. Such rights as they may have under that agreement apply only to future buildings which may be erected on that plot.

Nor have they any rights under the agreement of 1887, for not only was it annulled by the agreement of 1897, but it would have expired in any event by limitation in 1908.

The conclusions thus reached as to the character of the agreement of 1897 and as to its application only to buildings erected upon the property in question after its execution, render unnecessary the consideration of whether the restrictive covenants in that agreement applied only to the original character of the buildings to be erected, or limited their future use as well.

The judgment appealed from will, therefore, be reversed, and judgment rendered in favor of the defendants, dismissing the complaint of the plaintiffs herein, with costs.

The appropriate changes will be made in the findings of fact and conclusions of law to conform with this decision.

CLARKE, P. J., LAUGHLIN, SCOTT and SMITH, JJ., concurred.

Judgment reversed, with costs, and complaint dismissed, with costs.   Order to be settled on notice.